Slip Op. 19-8

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>                              Plaintiff,<br><br>          v.<br><br>SIX STAR WHOLESALE, INC.,<br><br>                              Defendant. | Before: Leo M. Gordon, Judge<br><br>Court No: 14-00252 |

**OPINION**

[Granting Plaintiff's motion for default judgment.]

Dated: January 18, 2019

Stephen C. Tosini, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Plaintiff United States. With him on the motion were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director.

Gordon, Judge: Before the court is the motion of Plaintiff United States ("the Government"), pursuant to USCIT Rule 55, for a default judgment against Defendant Six Star Wholesale, Inc. ("Six Star"), for a civil penalty in the amount of $486,456.04, and unpaid duties in the amount of $143,228.02, plus pre- and post-judgment interest and costs. See Pl.'s Mot. for Default J., ECF No. 15 ("Pl.'s Mot."). Defendant failed to answer the complaint, respond to Plaintiff's motion for default judgment, or otherwise appear in this action. The court has jurisdiction pursuant to 28 U.S.C. § 1582(1) (2012)

for the recovery of a civil penalty and duties under Section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (2012) ("§ 592").[1]

For the reasons set forth below, the court grants Plaintiff's motion for a default judgment, and awards the United States the amount of $529,684.06 (unpaid duties of $143,228.02, and civil penalties of $386,456.04). Additionally, the United States is entitled to pre-judgment interest on the unpaid duties, pursuant to 19 U.S.C. § 1677g, post-judgment interest computed in accordance with 28 U.S.C. § 1961, and costs.

## I. Background

The United States commenced this action to collect a civil penalty under § 592 for Defendant's alleged negligent misclassification of certain wire hangers and polyethylene retail carrier bags ("PRCBs") (collectively with wire hangers, "subject merchandise") and to recover unpaid duties on the entries of the wire hangers.

### A. Wire Hangers

From October 2009 to August 2010, Six Star imported 27 entries of wire hangers from China. See Declaration of Kemal Safadi ¶ 2, ECF No. 15-1 ("Safadi Decl."). Six Star's customs broker described the wire hangers as "clothing racks" and incorrectly classified them under HTSUS 9403.20.0020 with a 0% duty rate, instead of classifying the subject hangers under HTSUS 7326.20.0020 at a 3.9% duty rate. Id. ¶¶ 3, 5. Defendant also filed these entries as type 01 entries rather than as type 03,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant sections of Title 19, U.S. Code, 2012 edition.

which is required when imported merchandise is subject to antidumping duties. Id. ¶ 7. In reviewing the entries, U.S. Customs and Border Protection ("Customs") found that the three companies that manufactured the subject hangers refer to themselves on their websites as sellers of wire hangers rather than manufacturers of "clothing racks." Id. ¶ 8. Customs subsequently issued a pre-penalty notice and penalty claim to which Six Star failed to respond. Id. ¶¶ 14, 18. Upon that failure, Customs demanded payment of the duties from Six Star's sureties on the entries of the subject hangers. Id. ¶¶ 16–17. The sureties then paid $38,864.06 in duties. Id. After deducting this amount from the calculations, the Government now seeks to recover $143,228.02 in lost revenue (unpaid duties) and $364,186.16 in a penalty based on Six Star's negligence. Pl.'s Mot. at 2. To date, Six Star has not paid any duties or penalty. Id. at 3–4.

### B. Polyethylene Retail Carrier Bag Entries

From October 23, 2009 to July 18, 2010, Six Star imported 14 entries of PRCBs into the United States. Safadi Decl. ¶ 19. Six Star classified the PRCBs under HTSUS 3923.29.0000, dutiable at 3%, instead of classifying the subject PRCBs under HTSUS 3923.21.0085, at the same duty rate. Id. Additionally, Customs determined that the subject PRCBs were subject to antidumping duties in that a majority of the PRCBs were manufactured by a company in China with a company-specific antidumping duty rate of 25.69%, with the remaining PRCBs subject to the China-wide rate of 77.57%. Id. ¶¶ 20, 22. Customs issued a pre-penalty notice and penalty claim for negligence with a penalty of $122,271.88, as well as a demand for lost revenue of $61,135.94. Id. ¶¶ 23,

25. To date, Six Star has not responded administratively nor paid any duties or penalty; however, Six Star's sureties paid the outstanding duties. Id. ¶¶ 23, 26, 28–29. The Government now seeks a penalty of $122,271.88 against Six Star, again based on negligence.

## II. Legal Framework

Section 592 governs the assessment of a civil penalty for the negligent entry of imported merchandise into the United States. 19 U.S.C. § 1592. "[N]o person, by . . . negligence[,] . . . may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of . . . any document or electronically transmitted data or information, written or oral statement, or act which is material and false." 19 U.S.C. § 1592(a)(1). "A document, statement, act, or omission is material if it has the natural tendency to influence or is capable of influencing . . . . [Customs'] determination of an importer's liability for duty . . . ." 19 C.F.R. Pt. 171, App. B(B) (2009) (emphasis added).

The maximum penalty under § 592 for negligence is the lesser of "(i) the domestic value of the [subject] merchandise, or (ii) two times the lawful duties, taxes, and fees of which the United States is, or may be deprived." 19 U.S.C. § 1592(c)(3). The United States also may recover any unpaid lawful duties regardless of whether a monetary penalty is assessed. Id. § 1592(d).

The burden of proof for recovery of a civil penalty for negligence is initially on the United States "to establish the act or omission constituting the violation." Id.

§ 1592(e)(4). The burden then shifts to the alleged violator to prove that "the act or omission did not occur as a result of negligence." Id. The alleged violator must "affirmatively demonstrate that it exercised reasonable care under the circumstances." United States v. Ford Motor Co., 463 F.3d 1267, 1279 (Fed. Cir. 2009).

### III. Discussion

USCIT Rule 55 provides a two-step process for obtaining judgment when a party fails to plead or otherwise defend—(1) entry of default followed by (2) entry of a default judgment. See USCIT R. 55(a), (b); see also 10A C. Wright & A. Miller, Federal Practice & Procedure § 2682 (4th ed. 2018). Once the clerk of court has entered a default, the party seeking the default then must apply to the court for entry of a default judgment. See USCIT R. 55(b)(2).

Six Star failed to enter an appearance, file an answer to Plaintiff's complaint, or otherwise defend this action. The Government moved for entry of default, ECF No. 10, which the court granted, ECF No. 11. The Government then filed its motion for a default judgment.

The mere fact that a defendant is in default does not entitle a plaintiff to a default judgment as a matter of right. See City of New York v. Adventure Outdoors, Inc., 644 F. Supp. 2d 201, 212 (E.D.N.Y. 2009). Therefore, determining whether to grant a motion for a default judgment lies within the sound discretion of the court. Id. In exercising its discretion, the court considers whether (1) denial of the motion will prejudice plaintiff; (2) defendant has a meritorious defense; and (3) defendant's culpable

conduct contributed to the default. See Eastern Elec. Corp. v. Shoemaker Const. Co., 657 F. Supp. 2d 545, 551 (E.D. Pa. 2009) (quotation omitted).

On a very basic level, denial of the motion prejudices the Government because Defendant's failure to respond has prevented the Government's collection of lost revenue and penalties. As to the second consideration, Six Star had the opportunity to present a meritorious defense, but chose not to defend this action. Lastly, Six Star's actions (or lack thereof) via its default reflects a conscious disregard for the laws governing the importation of merchandise. Accordingly, the entry of a default judgment is appropriate.

The court now turns to the issues of liability and damages (the amount of the penalty). The entry of a default generally has the effect of establishing liability on the part of the defaulting party. See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). When a defendant defaults, it admits all well-pled factual allegations contained in the complaint. Although the factual basis for liability is established by the default, the default does not serve as an admission of the claim of liability. Id. Similarly, a party's failure to defend does not operate as an admission of the amount of damages claimed in the complaint. See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Founds. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012). The court will enter a default judgement against Six Star if (1) Plaintiff's allegations

in its complaint establish liability as a matter of law, and (2) Plaintiff's claim is for a sum certain or for a sum that can be made certain by computation. USCIT R. 55(b).

## A.  Liability

As discussed above § 592 prohibits the entry of merchandise by means of "any document or electronically transmitted data or information, written or oral statement, or act, which is material and false" when the person acted with fraud, gross negligence, or negligence. 19 U.S.C § 1592(a)(1)(A)(i). In this action the Government alleges that Six Star made material misstatements on its CF-7501 entry summaries by (1) falsely classifying 27 entries of wire hangers as "clothes racks" and (2) failing to declare that those hangers were subject to antidumping duties. Compl. ¶¶ 6–9; Pl.'s Mot. at 6. The Government further alleges that Six Star misclassified its PRCBs and failed to declare that they were subject to antidumping duties. Compl. ¶¶ 14–16; Pl.'s Mot. at 6. The false information that Six Star submitted is material because it influenced Customs' collection of the proper amount of duties on the entries of the subject merchandise. Compl. ¶¶ 10, 17. Consequently, Six Star submitted information to Customs that was material and false, thereby establishing liability under § 592 as a matter of law. The well-pled facts in the Government's complaint are sufficient to establish its entitlement to (1) the collection of the unpaid duties on the subject hangers and (2) a monetary penalty based on negligence under § 592 on the entry of both the subject hangers and

PRCBs. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114,137 (2d Cir. 2011).

## B.  Damages

As for damages, § 592 provides a maximum civil penalty amount for negligent violations, which may not exceed the lesser of the domestic value of the merchandise or two times the lawful duties, taxes, and fees of which the United States is or may be deprived. 19 U.S.C. § 1592(c)(3). The Government alleges that Six Star is liable for a civil penalty of $364,184.16, based on Defendant's negligence in the importation of the subject wire hangers, and for $182,092.08 in unpaid duties on those hangers. Compl. ¶ 13; Pl.'s Mot. at 4. The Government further claims that Six Star is liable for a civil penalty of $122,271.88, based on Defendant's negligence in the entry of the subject PRCBs. Id. In total, the Government seeks $143,228.02[2] in unpaid duties and a combined penalty of $486,456.04. Id.

Here, the Government seeks the statutory maximum penalty of two times the lawful duties of which the United States is or may be deprived, i.e., $486,456.04, which is less than the domestic value of the subject merchandise, $708,415.02.[3] See  Compl. ¶¶ 14

---

[2] The $143,228.02 is the net of the duties owed, $182,092.08, minus $38,864.06 paid by Six Star's sureties.

[3] The domestic value of the subject hangers is $491,923.08, and of the subject PRCBs is $216,491.94, for a total of $708,415.02. See Compl. and attached worksheet; Safadi Decl. ¶¶ 15, 24.

and attached worksheet;   Safadi Decl. ¶¶ 15, 24. While it may seek the statutory maximum, the Government is not entitled, as a matter of right, to a penalty in that amount. Rather, the court determines the appropriate penalty in its discretion. 19 U.S.C. § 1592(e)(1) (court to decide amount of penalty de novo); United States v. Nat'l Semiconductor Corp., 547 F.3d 1364, 1368–69 (Fed. Cir. 2008) (citing United States v. Ford Motor Co., 463 F.3d 1267, 1285 (Fed. Cir. 2006)).

The court will not presume that the statutory maximum is the starting point for determining the appropriate amount of the penalty. See United States v. Nat'l Semiconductor Corp., 547 F.3d 1364, 1370 (Fed. Cir. 2008) ("Not only do past cases state that nothing requires the court to grant Customs' request for the maximum penalty, they also explain that the court should not presume that the maximum is warranted."); United States v. Complex Mach. Works Co., 23 CIT 942, 946, 83 F. Supp. 2d 1307, 1312 (1999) ("[T]he law requires the court to begin its reasoning on a clean slate. It does not start from any presumption that the maximum penalty is the most appropriate or that the penalty assessed or sought by the government has any special weight."). Instead, the court typically "determines the appropriate amount in light of the totality of the evidence supporting a higher or lower penalty." United States v. Sterling Footwear, Inc., 41 CIT ___, ___, 279 F. 3d 1113, 1144 (2017).[4]

---

[4] The Government argues that Six Star has not sought to mitigate the penalty based on factors set forth in Complex Machine, 23 CIT at 949–50, 83 F. Supp. 2d at 1315. Those

The Government predicates much of its claim for the maximum penalty on Defendant's culpability, the gravity of the violation, and the nature and circumstances of the violation—focusing on Six Star's lack of reasonable care in the importation of the subject entries.[5] Pl.'s Mot. at 6–7. Meeting the reasonable care standard requires an importer of record, like Six Star, or an agent acting on its behalf (e.g., a customs broker), to review information regarding the nature and classification of the imported merchandise and information on the underlying transaction, including review of available documentation, to ensure that the merchandise is properly classified and assessed with appropriate duties—including antidumping duties—upon entry. See 19 U.S.C. § 1484(a)(1). Additionally, the importer of record is required to certify that the information

---

(footnote continued)

factors are: (1) the defendant's good faith effort to comply with the statute; (2) the defendant's degree of culpability; (3) the defendant's history of previous violations; (4) the nature of the public interest in ensuring compliance with the regulations involved; (5) the nature and circumstances of the violation at issue; (6) the gravity of the violation; (7) the defendant's ability to pay; (8) the appropriateness of the size of the penalty to the defendant's business and the effect of a penalty on the defendant's ability to continue doing business; (9) that the penalty not otherwise be shocking to the conscience of the court; (10) the economic benefit gained by the defendant through the violation; (11) the degree of harm to the public; (12) the value of vindicating the agency authority; (13) whether the party sought to be protected by the statute had been adequately compensated for the harm; and (14) such other matters as justice may require.

[5] The general parameters of what constitutes reasonable care are set forth in 19 C.F.R. Part 171, App. B(D)(6). See also H. Rep. No. 103–361 at 120 (1993), reprinted in 1993 U.S.C.C.A.N. 2552, 2670 (identifying possible methods by which one may show reasonable care).

contained in the relevant entry documents (including attendant invoices) are true and correct. See 19 U.S.C. §§ 1484(d)(1), 1485(a).

Here the Government contends that Defendant's entry documents stated that the subject entries contained "clothes racks," classifiable under HTSUS 9403.20.0020, free of duty, rather than as wire hangers, classifiable under HTSUS 7326.20.0020, dutiable at 3.9%. Pl.'s Mot. at 2–3. Similarly, Plaintiff maintains that the entry documents for Six Star's entries of PRCBs stated that the entries were "other" plastic bags classified under HTSUS 3923.29.0000, dutiable at 3%, instead of their proper classification as plastic bags made of polyethylene under HTSUS 3923.21.0085, also dutiable at 3%. Id. at 3–4. Plaintiff further argues that in addition to these material misstatements, all of Defendant's entries of both the subject wire hangers and PRCBs were filed as "01" type entries, falsely indicating that no antidumping duties should be assessed. Id. at 2, 4; see also Safadi Decl. ¶ 7 (noting that "[i]mporters are required to file antidumping entries as type '03' entries"). Assuming these facts as true, even a modicum of effort on the part of Six Star would have uncovered (1) the erroneous descriptions and classification of the subject merchandise, (2) the failure to declare the merchandise subject to antidumping duties in the entry documentation, and (3) the failure to pay the correct amount of duties at the time of entry.

In examining the gravity, and nature and circumstances of Defendant's violation, the court considers whether Six Star's actions were isolated or demonstrated a pattern

of disregard for the U.S. import laws. See United States v. New-Form Mfg. Co., 27 CIT

905, 921–22, 277 F. Supp. 2d 1313, 1328–29 (2003) (quoting Complex Machine, 83 F.

Supp. 2d at 1316–17). It is undisputed that the misclassifications encompassed 27 entries

over a 10-month period for the wire hangers and 14 entries for the PRCBs over

a contemporaneous 9-month period. Similarly, it is uncontroverted that Defendant

(or a customs broker acting on its behalf) failed to declare that the imported hangers and

PCRBs were subject to antidumping duties. The record before the court also shows that

that Six Star (or its customs broker) disregarded information on the face of the invoices

that contradicted its description of the imported merchandise on the subject entries. Pl.'s

Mot. at 2, 4.

Problematically for Defendant, the record administratively or before the court

is devoid of any information that demonstrates that Six Star (or its customs broker) took

any steps to ascertain the correct classification for either the subject wire hangers or

PRCBs, declare that the merchandise was subject to antidumping duties, or pay the

appropriate duties upon entry. Additionally, the record shows that Defendant failed to

respond to Customs' pre-penalty notice or penalty claim regarding the subject

merchandise. Because Six Star has defaulted, both at the administrative level and before

the court, there is no evidence to demonstrate any "extraordinary cooperation beyond

that expected from a person under investigation for a Customs violation." United States

v. Optrex Am., Inc., 32 CIT 620, 640, 560 F. Supp. 2d 1326, 1343 (2008). Accordingly,

Defendant has provided no information regarding defenses, claims, or facts that would support mitigation of the penalty amount.

The Government proffers evidence that the total domestic value of the subject entries was $708,415.02. See Safadi Decl. ¶¶ 15, 24. The Government also demonstrates that the potential revenue loss from the entries of the subject wire hangers was $182,092.08, and from the subject PRCBs was $61,135.94. See id. ¶¶ 14, 22.[6] Two times these amounts is $364,184.16 and $122,271.88, respectively, for a total of $486,456.04. Accordingly, the maximum allowable penalty amount for Six Star's negligent violation of § 592 for the subject entries is $486,456.04, which is less than the statutory cap of the total domestic value—$708,415.02—of the subject merchandise, as provided by § 592(c)(3)(A). Pl.'s Mot. at 7.

Additionally, the Government has provided documentation demonstrating that Customs issued the requisite pre-penalty notice and penalty claim to Six Star regarding the negligent entry of the subject merchandise. See Compl. ¶¶ 4, 11–13, 18–19; Safadi Decl. ¶¶ 14, 18, 23, 25. Ultimately, Customs issued a formal demand to Six Star for payment of $182,092.08 in unpaid duties for the subject hangers and a civil penalty of

---

[6] $182,092.08 is the total amount of duties owed on the 27 entries of wire hangers. See Safadi Decl. ¶ 14. Although $38,864.06 of this amount was paid by Six Star's sureties, id. ¶¶ 16–17, only $143,228.02 remains in actual lost revenue. Id. 18. Similarly, $61,135.94 is the sum of duties owed on the 14 entries of the subject PRCBs. Id. ¶ 22. Since Six Star's sureties paid all the duties, there is no remaining lost revenue. Id. ¶ 29. However, the statute authorizes the calculation of a civil penalty based on the amount of the "lawful duties, taxes, and fees of which the United States is or may be deprived." See 19 U.S.C. § 592(c)(3)(A)(ii).

$364,184.16 for the subject hangers and $122,271.88 for the subject PRCBs. See Safadi

Decl. ¶¶ 18, 23. Customs subsequently demanded payment from Six Star's sureties on

the duties owed on the subject merchandise. The sureties then paid $38,864.06 in duties

owed on the wire hangers, see id. ¶¶ 16–18, as well as the full amount owed in duties on

the subject PRCBs, $61,135.94, see id. ¶¶ 27–29. As of this date, Six Star has failed to

pay the combined civil penalty of $486,456.04 and the balance of $143,228.02 in duties

owed on the subject hangers. See id. ¶¶ 18, 28.

Given Six Star's actions (or lack thereof), the public interest favors a substantial

penalty. "There is a strong public interest in 'the truthful and accurate submission of

documentation to Customs and the full and timely payment of duties required on imported

merchandise. These are weighty interests, contravention of which necessitates the

imposition of a penalty of some substance.'" United States v. Horizon Prods. Int'l, Inc.,

41 CIT ___, ___, 229 F. Supp. 3d 1370, 1381 (2017) (quoting Complex Mach. Works.

Co., 39 CIT at ___, 83 F. Supp. 2d at 1317).

While a substantial penalty is warranted, the maximum penalty is not. In exercising

its discretion, the court notes that the Government was made partially whole when

it received payment of $100,000—approximately 40% of Defendant's total duty liability—

from sureties on behalf of Six Star. Though this may weigh in favor of a lesser penalty,

the court notes that the Government was deprived of $243,228.02, the total duties due

and owing at the time of entry of the subject merchandise. Another countervailing

consideration is that Six Star shirked its responsibility, as the importer of record, for

payment of all duties, leaving Customs to expend resources to seek and obtain some payment from secondary parties, Six Star's sureties. Based on these considerations and the totality of the circumstances, the court will impose a civil penalty in the amount of $386,456.04—computed by doubling the amount of outstanding duties, $143,228.02, plus one time the duties paid.

Accordingly, the court will enter judgment for the unpaid duties and a civil penalty, plus pre-judgment interest on those unpaid duties.[7] 19 U.S.C. § 1677g(b); see also United States v. NYCC 1959, Inc., 40 CIT ___, ___, 182 F. Supp. 3d 1346, 1349 (2016) (awarding pre-judgment interest on outstanding antidumping duties in penalty action). Under § 1677g(b) pre-judgment interest runs from the date of entry of the subject hangers to the date of payment at a rate of interest provided for in 26 U.S.C. § 6621. Cf. NYCC 1959, 40 CIT at ___, 182 F. Supp. 3d at 1349 n.5 (court awarded pre-judgment interest commencing on date of summons based on equitable considerations). Additionally, the court awards the Government post-judgment interest pursuant to 28 U.S.C. § 1961 on the civil penalty, and costs.

## IV.  Conclusion

For the foregoing reasons, the Government's motion for a default judgment against Six Star for negligent violation of 19 U.S.C. § 1592(a) is granted. The court will enter

---

[7] The payment of $38,864.06 by Six Star's sureties extinguished all of the regular import duties and some portion of the antidumping duties, leaving the balance of antidumping duties unpaid. Consequently, pre-judgment interest will be awarded in accordance with the statutory provision applicable to underpayments of antidumping duties, 19 U.S.C. § 1677g(b).

Court No. 14-00252                                                      Page 16

judgment in the amount of $529,684.06 ($386,456.04 in penalty and $143,228.02 in unpaid duties), plus pre-judgment interest upon the unpaid duties, post-judgment interest, and costs.


                                                    /s/ Leo M. Gordon
                                                  Judge Leo M. Gordon


Dated: January 18, 2019
       New York, New York